**Luther T. McGEE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 86–340.**

District of Columbia Court of Appeals.

Argued Oct. 22, 1987.

Decided Nov. 30, 1987.

Jamie S. Gardner, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Michael D. Brittin, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., were on the brief, for appellee.

Before PRYOR, Chief Judge, and NEWMAN and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted of assault,[1] possession of a prohibited weapon,[2] and carrying a pistol without a license.[3] His only contention on this appeal is that the evidence in support of the assault charge was insufficient to go to the jury. We agree and reverse the assault conviction, leaving the others undisturbed.

## I

James Collington testified that he was driving south on Georgia Avenue, N.W., shortly after noon on August 29, 1984, when a "foreign looking car" occupied by three men suddenly cut in front of him, almost causing a collision. Collington honked his horn to warn the other driver, who responded by shaking his fist at Collington. That driver, whom Collington identified as appellant McGee, maneuvered his car behind Collington's and continued to shake his fist. A moment later, as the two cars started across an intersection, McGee pulled his car alongside Collington's car on the right. The day was bright and sunny, and the windows of both cars were open. Collington heard McGee say, "I wish I could catch you on one of the back streets or side streets. I haven't killed [anyone] all morning." At the same time, Collington saw McGee brandishing a "bluish" handgun and pointing it "towards the windshield."[4]

Frightened by McGee's conduct, Collington sped off and quickly reported the incident to a police officer, Christopher Viamonte, who was standing on a nearby street corner. As they were talking, McGee's car drove past, and Collington pointed it out to Officer Viamonte. The officer then broadcast a description of the car on his walkie-talkie, along with a warning that the driver might be armed with a handgun. Another officer, Jose Bimbo, heard the broadcast description, and within minutes he saw the

car driving south on Fifth Street, N.W. He stopped the car, ordered its three occupants out, and frisked them. Officer Bimbo found nothing in the frisk, but on the roof of the car he discovered a brown pouch containing a loaded blue steel .38 caliber revolver. Mr. Collington was then brought to the scene, and when he identified McGee as the man who had threatened him, McGee was arrested.

Appellant McGee was the only defense witness. He testified that Collington had been the aggressor in the confrontation and that he himself had sought to avoid any argument. McGee also said that he had had no knowledge that a gun was in the car, nor had he ever seen the gun that Officer Bimbo recovered in the brown pouch, although he had seen a similar pouch earlier that day in the possession of one of his companions. He also said that one of them—he did not know which one—made the threatening remark which Collington had heard.

## II

There are two distinct kinds of criminal assault recognized in the District of Columbia. The more common is the "attempted-battery" type described in *Sousa v. United States,* 400 A.2d 1036, 1044 (D.C.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979). The other is the "intent-to-frighten" type, "which consists of some threatening conduct intended either to injure or to frighten the victim." *Robinson v. United States,* 506 A.2d 572, 574 (D.C.1986); *see Williamson v. United States,* 445 A.2d 975, 978 (D.C.1982); *Anthony v. United States,* 361 A.2d 202, 204–205 (D.C.1976); 2 W. LaFave & A. Scott, Substantive Criminal Law § 7.16, at 312–317 (1986). The major difference between the two is in the nature of the intent that must be proven. As this court said in *Robinson, supra:*

1. D.C.Code § 22–504 (1981).

2. D.C.Code § 22–3214(b) (1981).

3. D.C.Code § 22–3204 (1981). Appellant was acquitted on charges of possession of an unregistered firearm, D.C.Code § 6–2311(a) (1981), and

possession of ammunition without a valid registration certificate, D.C.Code § 6–2361 (1981).

4. It is not clear from Collington's testimony whether he was referring to the windshield of his own car or the windshield of McGee's car.

Attempted-battery assault requires proof of an attempt to cause a physical injury, which "may consist of any act tending to such corporal injury, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person." ... Intent-to-frighten assault, on the other hand, requires proof that the defendant intended either to cause injury or to create an apprehension in the victim by engaging in some threatening conduct; an actual battery need not be attempted.

506 A.2d at 574 (citations omitted).

In this case the jury was instructed only on the theory of attempted-battery assault.[5] Neither the prosecutor nor the court made any attempt to distinguish between the two types of assault, nor did the prosecutor argue to the jury that McGee could be found guilty if he intended to frighten the complainant. The jury was told only that it could find him guilty of assault if it found that he had attempted to injure Mr. Collington.

The government recognizes in its brief that *Robinson* "involved facts that cannot meaningfully be distinguished from those in this case." We affirmed a conviction of assault in *Robinson*, but only because the trial court had instructed the jury on both theories of assault. We specifically stated that if the court had given only the standard attempted-battery instruction, we would have had to reverse the conviction

for insufficiency of the evidence. 506 A.2d at 574. The case at bar presents that precise situation requiring reversal.[6]

Viewing the evidence in the light most favorable to the government, and mindful of the jury's right to determine credibility, weigh the evidence, and draw justifiable inferences of fact,[7] we find the evidence in this case insufficient to support a conviction of attempted-battery assault. The government presented no evidence that McGee displayed his weapon in an attempt to harm anyone, or that he "either fired the gun or attempted to fire it." *Robinson, supra,* 506 A.2d at 574. Significantly, the government concedes in its brief that the evidence was insufficient to support a conviction of an attempted-battery assault, arguing instead that it was sufficient to uphold a conviction of an intent-to-frighten assault, even without the additional instruction which we found necessary in *Robinson.* We reject that argument because "[c]ase law in this jurisdiction ... establishes that the failure to instruct the jury on every essential element of the crime is per se reversible 'plain error,' notwithstanding a defendant's failure to object to the instructions as given...." *Kind v. United States,* 529 A.2d 294, 295 (D.C. 1987) (citations and footnotes omitted). Under *Kind,* the trial court's failure to instruct the jury on intent to frighten as an element of the offense bars us now from affirming McGee's conviction on an intent-to-frighten theory.

---

**5.** The trial court instructed the jury as follows:

An assault is an attempt or effort with force or violence to do injury to the person of another, coupled with the apparent present ability to carry out such an attempt or effort.

An assault may be committed without actually touching, striking or committing bodily harm on another. However, the mere use of threatening words alone does not constitute an assault.

The essential elements of the offense of assault, each of which the Government must prove beyond a reasonable doubt, are as follows:

One, that the defendant made an attempt or effort, with force or violence, to do injury to the person of another.

Two, that at the time he made such an attempt or effort, he had the apparent present ability to effect such an injury.

Three, that at the time of the commission of the assault, he intended to do the act which constituted the assault.

This is, almost word for word, the standard instruction. Criminal Jury Instructions for the District of Columbia, No. 4.11 (3d ed. 1978). We held in *Robinson,* however, that this instruction describes only the attempted-battery type of assault. It is "all right as far as it goes, but it does not cover all situations." 506 A.2d at 574.

**6.** In fairness to the trial judge, we must point out that this case was tried five months before *Robinson* was decided.

**7.** *E.g., McClain v. United States,* 460 A.2d 562, 567 (D.C.1983); *Byrd v. United States,* 388 A.2d 1225, 1229 (D.C.1978).

We also reject the government's alternative argument that, by finding appellant guilty of possession of a prohibited weapon (PPW) with the intent to use it unlawfully, the jury necessarily found that he intended to frighten the complainant. *Cf. Stewart v. United States*, 116 U.S.App. D.C. 411, 324 F.2d 443 (1963) (failure to instruct on lesser included offense under one count held harmless, because jury verdict on another count necessarily included a finding of the disputed element under the first count distinguishing the greater offense from the lesser). One of the statutory elements of PPW under D.C.Code § 22–3214(b) (1981) is an "intent to use [the weapon] unlawfully against another...." But a weapon may be used unlawfully in more than one way. A pistol, in particular, may be used as a firearm, as a club, or as a means of engendering fright in another person. In the District of Columbia, any of these uses would constitute an assault and would therefore be unlawful. Thus an intent to use the pistol unlawfully would necessarily encompass an intent to commit either of the two types of assault recognized under local law. When the jury is instructed only on the elements of an attempted-battery assault, as in this case, it would not know that merely intending to frighten another person with a weapon is also an unlawful use of that weapon. For this reason we cannot interpret the verdict on the PPW charge as necessarily including a finding of an intent to frighten.

We affirm McGee's convictions of possession of a prohibited weapon and carrying a pistol without a license, since they are not contested on this appeal. We reverse his conviction of assault, however, and remand this case to the trial court with directions to enter a judgment of acquittal. *See Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Ford v. United States*, 533 A.2d 617, 627–628 (D.C. 1987) (en banc).

*Affirmed in part and reversed in part.*